UNITED STATES DISTRICT COURT JUDGE DER-YEGHIAYAN
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAGISTRATE JUDGE KEYS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. **12 CR 1005** |
| | ) | |
| v. | ) | |
| | ) | Violation: Title 18, United States Code, |
| JOHN LOHMEIER and | ) | Sections 1341 and 1343 |
| REBECCA LOHMEIER | ) | |

### COUNT ONE

**FILED**

The SPECIAL JANUARY 2012 GRAND JURY alleges:

DEC 2 0 2012

1.    At times material to this indictment:

THOMAS G BRUTON
CLERK, U S DISTRICT COURT

a.    Enterprise Trust Company began operating as a trust company in or about January 2006. Its principal place of business was located in Oak Brook, Illinois. Enterprise Trust primarily offered and sold custodial account services and managed account services to the public.

b.    Enterprise Trust purported to act as a custodian of the securities and funds in its customers' custodial accounts.

c.    Enterprise Trust purported to act in the best interests of its managed account customers and represented that it would make investment trading decisions for its managed account customers consistent with the particular customer's stated risk profile and investment objectives.

d.    At times during its operation from in or about January 2006 to in or about March 2008, Enterprise Trust controlled as much as $100,000,000 in securities and

funds in more than 1,000 customer custodial and managed accounts. A number of these accounts were individual retirement accounts, and employee benefit plan accounts such as profit sharing, 401(k) and 403(b) accounts. Many of its custodial account customers were former customers of a California-based securities brokerage firm called Advisory Financial Consultants, Inc.

      e.      Defendant JOHN LOHMEIER was the founder, sole shareholder and president of Enterprise Trust. Defendant LOHMEIER was primarily responsible for the operation of Enterprise Trust and its investment trading.

      f.      Defendant REBECCA LOHMEIER, formerly REBECCA TOWNSEND, was the vice president of Enterprise Trust and was primarily responsible for managing communications with customers.

      g.      Enterprise Trust pooled customers' securities and cash and maintained them in accounts in the name of Enterprise Trust at various securities brokerage firms and at a financial institution. Enterprise Trust executed securities transactions through these securities brokerage firms, including speculative options trading and short selling of securities.

      h.      Enterprise Trust also traded on margin at these securities brokerage firms. That is Enterprise Trust obtained credit from the securities brokerage firms to buy and sell securities. These loans were secured or collateralized primarily by the customers' securities and funds in Enterprise Trust's accounts. When the value of the securities and funds in Enterprise Trust's accounts declined, so did the value of the collateral supporting

2

the margin or loan. This led at times to the securities brokerage firms requesting additional collateral from Enterprise Trust, otherwise known as margin calls. Securities brokerage firms could also issue margin calls to request additional collateral to reduce the risk of the loan. This type of margin call was sometimes referred to as a margin risk call. When margin calls were not satisfied, securities brokerage firms could liquidate and sell securities in the account until the margin calls were satisfied.

      i.     Enterprise Trust created and distributed quarterly account statements to its customers purportedly showing the contents, transactional history and value of each particular customer's account.

      j.     Enterprise Trust's investment trading resulted in a number of margin calls.

      k.     On February 13, 2008, Enterprise Trust received a margin risk call for $11,000,000. At the time of this margin risk call, Enterprise Trust had open short positions of approximately $121,000,000, but only approximately $109,000,000 in cash in the account. Enterprise Trust failed to satisfy this margin risk call, which resulted in the liquidation of $11,155,353 in customers' securities including more than $8,000,000 of mutual fund shares belonging to custodial account customers.

      l.     On March 5, 2008, a court-appointed receiver was ordered to take control of the operation of Enterprise Trust, including taking custody of all of its books, records and papers.

      2.     Beginning no later than in or about January 2006 and continuing through at

3

least in or about March 2008, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOHN LOHMEIER and
REBECCA TOWNSEND,

defendants herein, devised and intended to devise and participated in a scheme to defraud customers of Enterprise Trust and others and to obtain money and property by means of materially false and fraudulent pretenses, promises and representations and by concealment of material facts, as more fully described below.

3.    As a part of a fraudulent scheme designed to finance Enterprise Trust and its investment trading, defendants LOHMEIER and TOWNSEND fraudulently obtained and maintained control of customers' funds and securities, misappropriated customers' funds and securities for use as collateral for trading, fraudulently allocated securities positions among customers, and misrepresented the status of and risk associated with customers' investments. The defendants concealed the scheme by creating and distributing false and misleading periodic account statements, by delaying customers' requests to transfer investments and by attempting to obstruct the activities of securities regulators and of the court-appointed receiver.

4.    It was part of the scheme to defraud that defendants LOHMEIER and TOWNSEND falsely represented and caused to be represented to custodial account customers that their assets would be kept safely, when defendants intended to and did encumber custodial account customers' securities and funds and placed them at additional

4

undisclosed risk by pledging them as collateral for investment trading without the knowledge or authorization of custodial account customers.

5. It was further part of the scheme to defraud that defendants LOHMEIER and TOWNSEND misappropriated custodial account customers' securities and funds by pledging them as collateral for investment trading unrelated to the custodial account customers. In other words, without their knowledge or authorization, custodial account customers' funds and securities were put at risk to support speculative investment trading that would not even have benefitted them had the trading been profitable.

6. It was further part of the scheme to defraud that defendants LOHMEIER and TOWNSEND failed to disclose and concealed from both managed account customers and custodial account customers that Enterprise Trust intended to and did engage in investment trading supported in part by the misuse of assets in custodial customers' accounts.

7. It was further part of the scheme to defraud that defendants LOHMEIER and TOWNSEND made and caused to be made misrepresentations to securities brokerage firms concerning Enterprise Trust's use of the custodial account customers assets as collateral. For instance, defendant LOHMEIER falsely represented to one securities brokerage firm that the customers had "been provided with, and approved, the required documentation and notification regarding the margin account where their assets will be held." Defendants LOHMEIER and TOWNSEND also falsely misled another securities brokerage firm about customers executing agreements allowing Enterprise Trust to use their assets for margin purposes.

5

8.     It was further part of the scheme to defraud that defendants LOHMEIER and TOWNSEND, on or about February 13, 2008, caused the misappropriation of more than $8,000,000 of custodial customers' securities by allowing them to be liquidated for purposes of meeting a margin risk call.

9.     It was further part of the scheme to defraud that defendants LOHMEIER and TOWNSEND, in order to retain control over custodian account securities and funds for margin purposes, intentionally delayed and caused delays in responding to customers' requests to withdraw or transfer securities and funds.

10.    It was further part of the scheme to defraud that defendants LOHMEIER and TOWNSEND fraudulently altered the performance of certain managed accounts, at least in part by engaging in a form of fraudulent trade allocation practice. The defendants directed, and caused to be directed, the reallocation of trading profits and losses among managed accounts, after the trades had been completed, to lull customers about the status of their accounts.

11.    It was further part of the scheme to defraud that defendants LOHMEIER and TOWNSEND caused to be created and to be distributed to customers false and misleading periodic account statements. For instance, these statements for custodial accounts did not disclose that customers' securities and funds were being offered and used as collateral for unrelated investment trading. Instead, they gave the false impression that customers' funds and securities had not been misused and were owned outright and unencumbered by the

6

customers. As another example, the statements for managed accounts at times contained fraudulent entries, which were the product of the fraudulent trade allocations.

12.    It was further part of the scheme to defraud that defendants LOHMEIER and TOWNSEND misrepresented, concealed and hid, and caused to be misrepresented, concealed and hidden, certain material facts, including the acts and purposes of the acts done in furtherance of the scheme. For instance, defendant LOHMEIER directed the secreting of documents relating to Enterprise Trust's investment trading including trade allocations before the arrival of the court-appointed receiver.

13.    It was further part of the scheme to defraud that defendants LOHMEIER and TOWNSEND used the United States mail, intrastate and interstate wires, and interstate travel to further their scheme.

14.    As a result of the scheme to defraud, defendants LOHMEIER and TOWNSEND fraudulently obtained and retained control of customers' securities and funds and ultimately caused losses to victim-customers of more than $8,000,000.

15.    In or about January 2008, in the Northern District of Illinois, and elsewhere,

JOHN LOHMEIER and
REBECCA TOWNSEND,

defendants herein, for the purpose of executing the scheme and attempting to do so, knowingly caused to be placed in a post office or authorized depository for mail matter in or around Oak Brook, Illinois to be delivered by the Postal Service to Salinas, California, an

7

envelope containing a periodic account statement for the period ending December 31, 2007

for Custodial Account Customer A;

In violation of Title 18, United States Code, Section 1341.

## COUNT TWO

The SPECIAL JANUARY 2012 GRAND JURY further charges:

1.      Paragraphs 1 through 14 of Count One are incorporated here.

2.      In or about January, 2008, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOHN LOHMEIER and
REBECCA TOWNSEND,

defendants herein, for the purpose of executing the scheme and attempting to do so, knowingly caused to be placed in a post office or authorized depository for mail matter in or around Oak Brook, Illinois to be delivered by the Postal Service to Milledgeville, Georgia, an envelope containing a periodic account statement for the period ending December 31, 2007 for Custodian Account Customer B;

In violation of Title 18, United States Code, Section 1341.

## **COUNT THREE**

The SPECIAL JANUARY 2012 GRAND JURY further charges:

1.     Paragraphs 1 through 14 of Count One are incorporated here.

2.     In or about January, 2008, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOHN LOHMEIER and
REBECCA TOWNSEND,

defendants herein, for the purpose of executing the scheme and attempting to do so, knowingly caused to be placed in a post office or authorized depository for mail matter in or around Oak Brook, Illinois to be delivered by the Postal Service to Milpitas, California, an envelope containing a periodic account statement for the period ending December 31, 2007 for Custodian Account Customer C;

In violation of Title 18, United States Code, Section 1341.

## COUNT FOUR

The SPECIAL JANUARY 2012 GRAND JURY further charges:

1.      Paragraphs 1 through 14 of Count One are incorporated here.

2.      In or about January, 2008, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOHN LOHMEIER and
REBECCA TOWNSEND,

defendants herein, for the purpose of executing the scheme and attempting to do so, knowingly caused to be placed in a post office or authorized depository for mail matter in or around Oak Brook, Illinois to be delivered by the Postal Service to Freemont, California, an envelope containing a periodic account statement for the period ending December 31, 2007 for Custodian Account Customer D;

In violation of Title 18, United States Code, Section 1341.

## COUNT FIVE

The SPECIAL JANUARY 2012 GRAND JURY further charges:

1.      Paragraphs 1 through 14 of Count One are incorporated here.

2.      In or about January, 2008, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOHN LOHMEIER and<br>
REBECCA TOWNSEND,

defendants herein, for the purpose of executing the scheme and attempting to do so, knowingly caused to be placed in a post office or authorized depository for mail matter in or around Oak Brook, Illinois to be delivered by the Postal Service to Newark, California, an envelope containing a periodic account statement for the period ending December 31, 2007 for Custodian Account Customer E;

In violation of Title 18, United States Code, Section 1341.

## COUNT SIX

The SPECIAL JANUARY 2012 GRAND JURY further charges:

1.      Paragraphs 1 through 14 of Count One are incorporated here.

2.      In or about January, 2008, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOHN LOHMEIER and
REBECCA TOWNSEND,

defendants herein, for the purpose of executing the scheme and attempting to do so, knowingly caused to be placed in a post office or authorized depository for mail matter in or around Oak Brook, Illinois to be delivered by the Postal Service to Milledgeville, Georgia, an envelope containing a periodic account statement for the period ending December 31, 2007 for Custodian Account Customer F;

In violation of Title 18, United States Code, Section 1341.

13

## COUNT SEVEN

The SPECIAL JANUARY 2012 GRAND JURY further charges:

1.     Paragraphs 1 through 14 of Count one are incorporated here.

2.     In or about January, 2008, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOHN LOHMEIER and
REBECCA TOWNSEND,

defendants herein, for the purpose of executing the scheme and attempting to do so, knowingly caused to be placed in a post office or authorized depository for mail matter in or around Oak Brook Illinois to be delivered by the Postal Service to Macon, Georgia, an envelope containing a periodic account statement for the period ending December 31, 2007 for Custodian Account Customer G;

In violation of Title 18, United States Code, Section 1341.

## COUNT EIGHT

The SPECIAL JANUARY 2012 GRAND JURY further charges:

1.     Paragraphs 1 through 14 of Count one are incorporated here.

2.     In or about January, 2008, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOHN LOHMEIER and
REBECCA TOWNSEND,

defendants herein, for the purpose of executing the scheme and attempting to do so, knowingly caused to be placed in a post office or authorized depository for mail matter in or around Oak Brook, Illinois to be delivered by the Postal Service to Pleasant Hill, Tennessee, an envelope containing a periodic account statement for the period ending December 31, 2007 for Custodian Account Customer H;

In violation of Title 18, United States Code, Section 1341.

Case: 1:12-cr-01005 Document #: 1 Filed: 12/20/12 Page 16 of 19 PageID #:16

## COUNT NINE

The SPECIAL JANUARY 2012 GRAND JURY further charges:

1.     Paragraphs 1 through 14 of Count One are incorporated here.

2.     On or about February 8, 2008, at approximately 10 a.m., in the Northern District of Illinois, Eastern Division, and elsewhere,

JOHN LOHMEIER and
REBECCA TOWNSEND,

defendants herein, for the purpose of executing the scheme and attempting to do so, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs and signals to Chicago, Illinois by way of a location outside Illinois, namely an email with attachments to optionsXpress, Inc.;

In violation of Title 18, United States Code, Section 1343.

## COUNT TEN

The SPECIAL JANUARY 2012 GRAND JURY further charges:

1.      Paragraphs 1 through 14 of Count One are incorporated here.

2.      On or about February 8, 2008, at approximately 11 a.m., in the Northern District of Illinois, Eastern Division, and elsewhere,

JOHN LOHMEIER and
REBECCA TOWNSEND,

defendants herein, for the purpose of executing the scheme and attempting to do so, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs and signals to Chicago, Illinois by way of a location outside Illinois, namely an email with an attachment to optionsXpress, Inc.;

In violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

The SPECIAL JANUARY 2012 GRAND JURY further alleges:

1.     The allegations in Counts One through Ten of this indictment are realleged here for the purpose of alleging forfeiture pursuant to Title 18, United States code, Section 981(a)(1(C) and Title 28, United States Code, Section 2461(c).

2.     As a result of defendants LOHMEIER's and TOWNSEND's violations of Title 18, United States Code, Sections 1341 and 1343, as alleged in Counts One through Ten, the defendants shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all right, title, and interest each may have in any property constituting, and derived from proceeds each obtained directly or indirectly as the result of such violations.

3.     The interests of the defendants subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), include the sum of at least $8,000,000.

4.     If any of the forfeitable property described above, as a result of any act or omission by defendants:

      (a)     cannot be located upon the exercise of due diligence;

      (b)     has been transferred or sold to, or deposited with, a third party;

      (c)     has been placed beyond the jurisdiction of the court;

      (d)     has been substantially diminished in value; or

18

(e)     has been commingled with other property which cannot be divided

without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the

provisions of Title 21, United States Code, Section 853(p) as incorporated by Title 28, United

States Code, Section 2461(c);

A TRUE BILL:


_____

FOREPERSON


_____

ACTING UNITED STATES ATTORNEY

19