

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

*JAN 13 2015*

UNITED STATES OF AMERICA

v.

JOHN LOHMEIER

No. 12 CR 1005

Judge Samuel Der-Yeghiayan

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant JOHN LOHMEIER, and his attorney, CHARLES L. NESBIT, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.     The superseding information in this case charges defendant with conspiracy to commit mail fraud, wire fraud and securities fraud in violation of Title 18, United States Code, Section 371 (Count One), and securities fraud in violation of Title 15, United States Code, Sections 77q(a) and 77x (Counts Two and Three).

3.     Defendant has read the charges against him contained in the superseding information and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the superseding information: Count One, which charges defendant with conspiring and agreeing to commit mail fraud, wire fraud and securities fraud in violation of Title 18, United States Code, Section 371; Count Two, which charges defendant with securities fraud in the offer or sale of a security in violation of Title 15, United States Code, Sections 77q(a) and 77x; and Count Three, which charges defendant with securities fraud in the offer or sale of a security in violation of Title 15, United States Code, Sections 77q(a) and 77x.

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One, Two and Three of the superseding information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

a. With respect to Count One of the superseding information, defendant John Lohmeier and his co-defendant Rebecca Lohmeier, during the period from in or about 2006 to in or about March 2008, in the Northern District of Illinois, Eastern Division, and elsewhere, conspired and agreed to engage in a mail fraud (Title 18, United States Code, Section 1341), wire fraud (Title 18, United States Code, Section 1343) and securities fraud (Title 15, United States Code, Section 77q(a)) scheme designed to finance Enterprise Trust Company and its

2

investment trading to the financial detriment of customers, and defendants committed overt acts, including the mailing of periodic account statements to customers, the use of interstate emails to intentionally mislead a securities clearing broker and the use of the telephone system to order and execute investment trades, in an effort to advance the goals of this conspiracy in violation of Title 18, United States Code, Section 371.

Enterprise Trust Company had its primary place of business in Oak Brook, Illinois. The company, through defendants, offered and sold trust services to the public. These services included managing investment accounts and maintaining custodial accounts for customers, to whom defendants owed a fiduciary duty to act in the best interests of the customer. Custodial investment accounts, as represented by defendants to customers and prospective customers, were accounts in which the defendants and Enterprise Trust Company would take no action affecting the assets in the accounts without obtaining the customers' permission. Most of Enterprise Trust Company's nearly 1200 investment accounts were custodial accounts.

Defendant John Lohmeier was the founder, sole shareholder and president of the company. He was primarily responsible for the operation of the trust company and its investment trading. Co-defendant Rebecca Lohmeier, formerly Rebecca Townsend, was a vice president of the company and primarily responsible for managing communications with customers.

3

As a part of their conspiracy and scheme to defraud, defendants agreed to and did: fraudulently obtain and maintain customers' funds and securities, misappropriate customers' funds and securities for use as collateral for trading, fraudulently reallocate securities positions among customers, misrepresent the status of and risk associated with customers' investments and take steps to conceal their conspiracy and scheme.

The investment trading directed by defendant John Lohmeier was consistently unprofitable. The primary fraudulent activity in which defendants engaged was the knowing misappropriation of custodial customers' securities, dividends and capital gains to have sufficient funds to continue trading despite the losses. Defendants misappropriated these custodial customers' assets to use them as collateral for margin trading intended solely to benefit managed account customers. In other words, defendants put custodial customers' assets at risk for trading, from which the custodial customers would never benefit.

Defendants agreed to and did misrepresent their intended use of custodial assets to customers and intentionally concealed the misuse of these assets from customers and others. Defendants provided custodial customers with a customer agreement which stated nothing about the use of their assets for margin trading, let alone margin trading for the sole benefit of others. Defendants did not provide any margin disclosure to customers. Defendants did provide quarterly account statements to customers, which, at least, lulled custodial customers into believing that their accounts were safe and unencumbered.

4

Defendants caused the lulling quarterly account statements for the period ending December 31, 2007, to be mailed as part of the conspiracy and scheme from the Oak Brook, Illinois area in or about the middle of January, 2008, to customers, including Custodial Account Customers A through H identified in the superseding indictment and superseding information.

Beginning no later than in or about early 2007, defendants agreed to and did expose custodial customers' assets to this margin risk, without the customers' knowledge or authorization. In addition to intentionally misleading customers about the use of their assets, defendants intentionally misled Enterprise Trust Company's securities clearing brokers and securities regulators about their use of custodial assets for collateral for margin trading. For instance, defendant John Lohmeier, with defendant Rebecca Lohmeier's knowledge, falsely caused to be represented to two securities clearing brokers and to a securities regulator that margin disclosures had been made to customers. As another example, defendants intentionally misled one of Enterprise Trust Company's securities clearing brokers about Enterprise Trust Company's authority to use customers' assets for margin trading and short selling, as a part of which defendants caused the use of two interstate emails in the Northern District of Illinois, Eastern Division to Chicago by way of a location outside Illinois on February 8, 2008.

On February 13, 2008, one of Enterprise Trust Company's securities clearing brokers issued a risk margin call to Enterprise Trust Company for $11,000,000, which defendants were unable to meet. As a result, over $8,000,000 of mutual fund

investments owned by custodial account customers were liquidated to satisfy the margin call.

Two of the investment trades defendants caused to be ordered and executed through the use of the telephone system, which trades increased the risk to the misappropriated collateral in the period before the $11,000,000 risk margin call, were the short sale of 45,000 shares of ProShares Ultrashort DOW 30 on February 1, 2008 and the short sale of 80,000 shares of ProShares Ultrashort S&P 500 on February 4, 2008. While it was defendant John Lohmeier who made the specific decisions, defendant Rebecca Lohmeier understood and agreed that Enterprise Trust Company was engaging in short sales of securities, using customers' assets as collateral for the trading without their knowledge or authority. These short sales and other trades caused by defendants were only made possible by defendants' deception: on custodial customers about the use of their assets; on managed account customers who did not authorize short selling and other risky trading for their accounts; and on the securities clearing brokers which allowed the trading under false pretense that defendants had the authority to margin all of the encumbered assets; and, on all involved in the transactions that defendants had the financial ability to engage in the securities trades without misusing customers' funds and securities.

Defendants agreed to and did take a number of other steps to further and conceal the conspiracy and scheme, including: fraudulently reallocating trades between managed customers' accounts; not assigning unprofitable investment

trading positions to specific managed customers' accounts; and providing to customers periodic account statements, which falsely lulled customers into believing that their accounts were unencumbered and safe. Also, to further the conspiracy and scheme, defendants used and caused the use of the mails, interstate wires including emails, and means and instruments of communication and transportation in interstate commerce including telephone calls.

As a result of the conspiracy and scheme, Enterprise Trust Company was liquidated and customers sustained losses.

b. With respect to Count Two of the superseding information, during the period from in or about 2006 to in or about March 2008, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant John Lohmeier and his co-defendant Rebecca Lohmeier, in the offer and sale of a security, directly and indirectly, knowingly and willfully; employed a device, scheme and artifice to defraud; obtained money and property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and engaged in a transaction, practice and course of business which would and did operate as a fraud and deceit upon a purchaser of the security, in violation of Title 15, United States Code, Sections 77q(a) and 77x.

As more fully described in subparagraph a. above, defendants engaged in a scheme to defraud customers of Enterprise Trust Company and others to finance Enterprise Trust Company and its investment trading. As a part of this scheme,

7

defendants intentionally deceived customers and others about defendants' use of securities in customers' accounts for margin trading, defendants' authority to encumber those assets for margin trading, defendants' financial ability to engage in securities trading without the misappropriated customers' assets, and defendants' authority to execute short sales of securities and other securities transactions on behalf of Enterprise Trust Company customers.

One such short sale of securities in furtherance of the scheme took place on or about February 1, 2008 in the Northern District of Illinois, Eastern Division and elsewhere. For the purpose of executing the scheme to defraud, defendants knowingly caused the use of the means and instruments of communication in interstate commerce, including the placement of a telephone call in Chicago as part of the process to sell short 45,000 shares of ProShares Ultrashort DOW 30 for approximately $2,400,000 for a margin account in the name of Enterprise Trust Company.

      c.     With respect to Count Three of the superseding information, during the period from in or about 2006 to in or about March 2008, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant John Lohmeier and his co-defendant Rebecca Lohmeier, in the offer and sale of a security, directly and indirectly, knowingly and willfully: employed a device, scheme and artifice to defraud; obtained money and property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not

misleading; and engaged in a transaction, practice, and course of business which would and did operate as a fraud and deceit upon purchasers of the security, in violation of Title 15, United States Code, Sections 77q(a) and 77x.

As more fully described in subparagraph a. above, defendants engaged in a scheme to defraud customers of Enterprise Trust Company and others to finance Enterprise Trust Company and its investment trading. As a part of this scheme, defendants intentionally deceived customers and others about defendants' use of securities in customers' accounts for margin trading, defendants' authority to encumber those assets for margin trading, defendants' financial ability to engage in securities trading without the misappropriated customers' assets and defendants' authority to execute short sales of securities and other securities transactions on behalf of Enterprise Trust Company customers.

One of the deceptive short sales of securities in furtherance of the scheme took place on or about February 4, 2008, in the Northern District of Illinois, Eastern Division, and elsewhere. For purposes of executing the scheme to defraud, defendants knowingly caused the use of the means and instruments of communication in interstate commerce, specifically the placement of a telephone call from Chicago as part of the process to sell short 80,000 shares of ProShares Ultrashort S&P 500 for approximately $4,800,000 for a margin account in the name of Enterprise Trust Company.

## Maximum Statutory Penalties

7.     Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.     Count One carries a maximum sentence of 5 years' imprisonment.  Count One also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that with respect to Count One the judge also may impose a term of supervised release of not more than three years.

b.     Count Two carries a maximum sentence of 5 years' imprisonment. Count Two also carries a maximum fine of $250,000. Defendant further understands that with respect to Count Two, the judge also may impose a term of supervised release of not more than three years.

c.     Count Three carries a maximum sentence of 5 years' imprisonment. Count Three also carries a maximum fine of $250,000. Defendant further understands that with respect to Count Three the judge also may impose a term of supervised release of not more than three years.

d.     Defendant further understands that the Court must order restitution to the victims of the conspiracy offense in an amount determined by the Court.

e.     In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

f.      Therefore, under the counts to which defendant is pleading guilty, the total possible maximum sentence is 15 years' imprisonment. In addition, defendant is subject to a total maximum fine of $750,000, or twice the gross gain or gross loss resulting from the offenses of conviction, whichever is greater, a period of supervised release, and special assessments totaling $300, in addition to any restitution ordered by the Court.

### Sentencing Guidelines Calculations

8.      Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9.      For purposes of calculating the Sentencing Guidelines, the parties agree on the following points, except as specified below:

a.      **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2014 Guidelines Manual.

b.      **Offense Level Calculations**.

i.      The three offenses of conviction are grouped, pursuant to Guideline Section 3D1.2(d).

11

ii.     The base offense level is 6, pursuant to Guideline Sections 2X1.1 and 2B1.1(a)(2) and there is no reduction in the offense level pursuant to Guideline Section 2X1.1(b)(2), since the substantive offenses were substantially completed.

iii.    The parties agree that the offenses of conviction caused losses to victims. Since the government contends that exceeded $8,000,000, the offense level should be increased at least 20 levels, pursuant to Guideline Section 2B1.1(b)(1)(K). Defendant reserves the right to contest the amount of loss at sentencing and the government reserves the right to show more than $8,000,000 in losses at sentencing.

iv.     The government contends that the offenses involved more than 50 victims resulting in at least a 4 level increase to the offense level, pursuant to Guideline Section 2B1.1(b)(2). The government reserves the right to show that the offenses involved more than 250 victims. Defendant reserves the right to contest the number of victims at sentencing.

v.      The government contends that the offenses involved otherwise sophisticated means resulting in a 2 level increase in the offense level, pursuant to Guideline Section 2B1.1(b)(10)(C). Defendant reserves the right to contest this enhancement at sentencing.

vi.     The government contends that the offenses substantially jeopardized the safety and soundness of a financial institution, Enterprise Trust Company, resulting in a 4 level increase to the offense level, pursuant to Guideline

12

Section 2B1.1(b)(16)(B). Defendant reserves the right to contest this enhancement at sentencing.

vii.    Defendant's offense involved a violation of securities law. The government contends that at the time of the offense, defendant was a person associated with an investment adviser resulting in a 4 level increase to the offense level, pursuant to Guideline Section 2B1.1(b)(19)(A). Defendant reserves the right to contest this enhancement at sentencing.

viii.    The government contends that defendant knew or should have known that one or more victims of the offenses were vulnerable due to age, resulting in at least a 2 level increase in the offense level, pursuant to Guideline Section 3A1.1(b). Defendant reserves the right to contest this enhancement at sentencing.

ix.    Defendant operated a trust company and had a fiduciary duty toward the customers of Enterprise Trust Company. The government contends that the offenses involved abusing this position of trust resulting in a 2 level increase in the offense level, pursuant to Guideline Section 3B1.3. Defendant reserves the right to contest this enhancement at sentencing. If the Guideline Section 2B1.1(b)(19)(A) enhancement is found to apply, pursuant to Application Note 15(C) to Guideline Section 2B1.1, this enhancement should not be applied.

x.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and

13

if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

                xi.      In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

                c.      **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I. Therefore, if the government prevails on all of the sentencing enhancement disagreements, defendant's offense level would be at least 41 and his advisory Guideline sentencing range would exceed the statutory maximum sentence of 180 months allowed for the offenses of conviction. This would result in an advisory Guideline sentencing range for defendant of 180 months.

d.     Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government or defendant to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10.     Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11.    Each party is free to recommend whatever sentence it deems appropriate.

12.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.    Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution to victims in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing.

14.    Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

15.    Defendant agrees to pay the special assessment of $300 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16.     Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

17.     After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the original indictment and superseding indictment as to defendant. Defendant understands that the terms of this plea agreement become null and void if his co-defendant does not also plead guilty.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

18.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 12 CR 1005.

19.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

20.     Defendant understands that nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from defendant and his spouse or defendant's partnership or corporations.

## Waiver of Rights

21.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

      a.     **Right to be charged by indictment**. Defendant understands that he has a right to have the charges prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

      b.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

      i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

      ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney

would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the superseding information separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

19

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

c.     **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of

20

defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

        d.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

        22.    Defendant understands that he has the right to have the criminal charges in the superseding information brought within five years of the last of the alleged acts constituting the specified violations. By signing this document, defendant knowingly waives any right to have the charges in the superseding information brought against him within the period established by the statute of limitations. Defendant also knowingly waives any defense or claim based upon the statute of limitations or upon the timeliness with which the charges in the superseding information were brought.

### Presentence Investigation Report/Post-Sentence Supervision

        23.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

        24.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to

and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

25. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

26. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including

22

providing financial statements and supporting records as requested by the United States Attorney's Office.

27.     Defendant understands that pursuant to Title 12, United States Code, Sections 1785(d) and 1829, his conviction in this case will prohibit him from directly or indirectly participating in the affairs of any financial institution insured by the National Credit Union Share Insurance Fund or the Federal Deposit Insurance Corporation, except with the prior written consent of the National Credit Union Administration Board or the FDIC and, during the ten years following his conviction, the additional approval of this Court. Defendant further understands that if he knowingly violates this prohibition, he may be punished by imprisonment for up to five years, and a fine of up to $1,000,000 for each day the prohibition is violated.

28.     Defendant understands that pursuant to Title 29, United States Code, Section 1111, his conviction in this case will prohibit him from directly or indirectly participating in the affairs of any employee benefit plan for the period of thirteen years after conviction or after the end of any incarceration, whichever is later, unless the Court, pursuant to the Sentencing Guidelines and policy statements under Title 28, United States Code, Section 994(a), determines that defendant's direct or indirect service with or to an employee benefit plan would not be contrary to the purposes of Title 29, United States Code, Section 1111. Defendant further understands that if he violates this prohibition, he may be punished by imprisonment for up to five years and a fine of up to $250,000.

23

29.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

Defendant understands that the government has the right to seek to compel defendant's truthful testimony before a grand jury or a district court.

### Conclusion

30.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

31.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph,

notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

32.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

33.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

34.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _____1 - 13 - 15_____

ZACHARY T. FARDON
United States Attorney

JOHN LOHMEIER
Defendant

EDWARD G. KOHLER
Assistant U.S. Attorney

CHARLES L. NESBIT
Attorney for Defendant

SHOSHANA L. GILLERS
Assistant United States Attorney

ANDREW POLOVIN
Assistant United States Attorney